UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:22-CV-34-CRS

KEVIN BENNETT                                                                                           PLAINTIFF

v.

JASON WOOSLEY, *et al.*                                                                          DEFENDANTS

## MEMORANDUM OPINION & ORDER

This is a *pro se* 42 U.S.C. § 1983 action in which plaintiff Kevin Bennett has sued Grayson County Jailer Jason Woosley, Grayson County Detention Center ("GCDC") Chief Deputies Jason VanMeter and Bo Thorpe, and Captain Jennifer Johnson in their individual and official capacities for alleged cruel and unusual punishment. This matter is now before the court on the defendants' Motion for Summary Judgment. [Mot. Sum. Judg., DN 42]. Fully briefed, the Motion is ripe for adjudication.

I.   Background

At the time of the alleged events, Bennett was a pretrial detainee at GCDC. [Compl., DN 1 at pg. 1]. Bennett alleges that Jailer Woosley, Chief Deputies VanMeter and Thorpe, and Captain Johnson subjected him to cruel and unusual punishment. [*Id.* at ¶ 52]. Specifically, Bennett alleges that the defendants placed him in segregation [*id.* at ¶¶ 1–2] and limited Bennett's diet to three "sack lunches" per day for 49 days, each composed of "one (1) piece of bologna, with two (2) pieces of bread, approximately two (2) ounces of corn chips, and two (2) small cookies." [*Id.* at ¶ 29]. Bennett alleges he lost fifteen pounds because of this diet. [*Id.* at ¶ 35]. Further, Bennett alleges that the defendants directed Bennett's cell to be searched three times daily over a period of 19 days. [*Id.* at ¶ 23]. According to Bennett, his segregation, sack lunch diet, and

Page **1** of **9**

subjection to frequent cell searches, taken together or in isolation, amount to unconstitutional punishment. [*Id.* at ¶ 52].

The defendants concede that Bennett "was placed in administrative segregation, placed on sack lunches[,] and had his cell searched on a periodic basis" — so there are no genuine disputes of material fact as to these conditions of Bennett's confinement. [Mot. for Sum. Judg., DN 42-1 at 11] (acknowledging same).

## II.  Legal Standard

A court may grant a motion for summary judgment where it finds that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party must produce specific facts demonstrating a genuine dispute of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324). The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6–7 (6th Cir. May 5, 2010) (citations omitted). Additionally, the Sixth Circuit Court of Appeals has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter" its burden of showing a genuine dispute for trial. *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010).

### III.  Discussion

**A. The defendants are entitled to a summary judgment on Bennett's official capacity claims.**

Bennett sued Jailer Woosley, Chief Deputies VanMeter and Thorpe, and Captain Johnson in their official capacities [Compl., DN 1 at pg. 2] but he seeks only monetary relief [*id.* at pg. 10]. Monetary relief, however, is unavailable from state government officials sued in their official capacities. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (concluding that a state, its agencies, and its officials sued in their official capacities are not persons who may be sued for damages under § 1983). That is because they are absolutely immune from § 1983 liability under the Eleventh Amendment to the United States Constitution. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). For this reason, all Bennett's official capacity claims fail as a matter of law and the defendants are entitled to a summary judgment on these claims. Next, the court will consider Bennett's remaining individual capacity claims.

**B. The defendants are entitled to a summary judgment on Bennett's individual capacity claims.**

Two elements are required to state a claim under § 1983: "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Bennett has alleged § 1983 claims against Jailer Woosley, Chief Deputies VanMeter and Thorpe, and Captain Johnson in their individual capacities. Thus, he has sued state actors. Bennett identifies the Eighth Amendment right to be free of cruel and unusual punishment, particularly the assurance of "humane conditions of confinement," as being the constitutional right at issue in this case. [Resp., DN 60 at 16] (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1990)). Bennett has also pleaded a Fourteenth Amendment procedural due process claim against Captain Johnson for placing him in segregation without a hearing. The court will address both claims in turn.

A

Although Bennett contends the Eighth Amendment is at issue, as a pretrial detainee, he is protected by the Fourteenth Amendment from "cruel and unusual punishment." *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). The Fourteenth Amendment is implicated, rather than the Eighth, because pretrial detainees "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Thus, pretrial conditions of confinement that amount to punishment violate the Fourteenth Amendment's Due Process Clause. Accordingly, when a pretrial detainee raises a conditions of confinement claim, the "proper inquiry" is "whether those conditions amount to punishment." *Id.*; *see also Griffith v. Franklin Cnty., Ky.*, 975 F.3d 554, 569 (6th Cir. 2020). A "particular condition or restriction of

pretrial detention" does not amount to "punishment" when it is "reasonably related to a legitimate governmental objective[.]" *Wolfish*, 441 U.S. at 539.

Bennett argues that the conditions of his pretrial confinement at GCDC amounted to punishment. However, the uncontroverted record evidence shows that the restrictions placed on Bennett were "reasonably related to a legitimate governmental objective[.]" *Id.* The defendants imposed the conditions for the following reasons: Bennett threatened staff, "us[ed] his food tray to assault other inmates," "put urine and feces in containers included with his food tray" to "throw the content on other inmates," and "even exposed himself to female staff." [Woosley Aff., DN 42-6 at 1–2]; *see also* [Grievance No. 10872, DN 42-8 at 10]; [1/12/22 Resident Requisition, DN 42-8 at 6]; [3/6/22 Resident Requisition, DN 42-8 at 16]. To prevent such incidents from recurring, at times, the defendants subjected Bennett to "enhanced security measures" [1/5/22 Resident Requisition, DN 42-8 at 3] "to assure the security of the facility" [Woosley Aff., DN 42-6 at 2]. *See also* [Grievance No. 10810, DN 60-1 at 32] ("As long as your behavior is bad your status will be elevated to higher security levels.").

Bennett alleges that these reports are false, but he offers no proof to support this conclusory allegation. Although Bennett provided the court with an affidavit, it does not address the verity of those reports. [Bennett Aff., DN 60-2 at 2–3]. Instead, he simply asserts they are false in an unsworn filing, which is insufficient to raise a genuine dispute for trial as to the conduct which led to the restrictions at issue. *Viergutz*, 375 F. App'x at 485; *Anderson*, 477 U.S. at 248–49.

Accordingly, the factual grounds for segregating Bennett, restricting him to sack lunches, and searching his cell are undisputed. The only remaining issue is why these conditions were imposed. If they were imposed for a "legitimate governmental objective," these conditions are

constitutional as a matter of law. *Wolfish*, 441 U.S. at 539. The evidence as to why these conditions were imposed is also uncontroverted.

The first such measure was placing Bennett in segregation. The defendants did so "to protect the safety of other inmates, and Mr. Bennett, and to maintain control of GCDC and to assure the security of the facility." [Woosley Aff., DN 42-6 at 2]. Doing so is in accord with their "wide-ranging [discretion] in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Wolfish*, 441 U.S. at 547. Thus, the decision to place Bennett in segregation was "reasonably related to [the] legitimate governmental objective" of ensuring the safety and security of GCDC, staff, and other inmates. *Id.* at 539. As such, Bennett's "segregation did not, under the circumstances, amount to unconstitutional 'punishment.'" *Martucci v. Johnson*, 944 F.2d 291, 294 (6th Cir. 1991) (citing *Wolfish*, 441 U.S. at 535).

Another "enhanced security measure" was the decision to place Bennett on a sack lunch diet. This decision was made because Bennett "would put urine and feces in containers included with his food tray and would throw the content on other inmates." [Woosley Aff., DN 42-6 at 2]; *see also* [Grievance No. 10901, DN 42-8 at 12]; [Grievance No. 10872, DN 42-8 at 10]; [Grievance No. 10788, DN 42-8 at 2]. Consequently, the defendants determined that Bennett could not be given "any item" that he "could weaponize to assault other inmates or staff." [Woosley Aff., DN 42-6 at 2]; *see also* [Grievance No. 10901, DN 42-8 at 12]. This is certainly a legitimate governmental objective. *Wolfish*, 441 U.S. at 539.

Additionally, providing pretrial detainees with sack lunches does not amount to punishment. *Higgs v. Thorpe*, No. 4:21-cv-66-JHM, 2021 WL 4477081, at *3 (W.D. Ky. Sept. 29, 2021) (dismissing such a claim on initial review pursuant to 28 U.S.C. § 1915A). Indeed, "[w]hile

prisoners must receive food of adequate nutrition, this requirement does not encompass a certain number of hot meals per day." *Crockett v. Hawkins, et al.*, No. 3:16-cv-2059-GAD, 2017 WL 3381659, at *4 (M.D. Tenn. Aug. 7, 2017). Here, Jailer Woosley attested in a sworn affidavit that the sack lunches contained "food of adequate nutrition," *id.*: "a state dietician and the Department of Corrections for the Commonwealth of Kentucky" "reviewed" and "approved" that "each sack lunch contained at least eight hundred (800) calories for a total of two thousand four hundred (2400) calories per day." [Woosley Aff., DN 61-1 at 1–2]. This comports with GCDC's nutrition policy: "The Grayson County Detention Center shall provide at least 2400 calories of food stuff per inmate per day." [GCDC Policy, DN 60-1 at 2]. Bennett did not offer any proof to controvert the defendants' proof that the sack lunches contained "food of adequate nutrition." *Crockett*, 2017 WL 3381659, at *4.

The final complained-of "enhanced security measure" was the directive that Bennett's cell be searched three times per day. Bennett does not offer any evidence to suggest that his cell was searched three times daily as a form of punishment. Rather, it is clear from the uncontroverted evidence that the defendants decided to frequently search Bennett's cell "to make certain" Bennett does not "retain items that [he] could use to conduct another" assault on inmates "by throwing human waste on them." [Grievance No. 10788, DN 42-8 at 2]; *see also* [Grievance No. 10777, DN 60-1 at 26] (Bennett grieving that "Administration notified all deputies are to search my cell (3) three times a day *after every meal*") (emphasis added). Thus, the defendants' decision to frequently search Bennett's cell was motivated by security concerns, again a legitimate governmental objective. *Wolfish*, 441 U.S. at 539.

In short, the defendants placed Bennett in segregation, put him on a sack lunch diet, and subjected him to frequent cell searches "to protect the safety of other inmates, and Mr. Bennett,

and to maintain control of GCDC and to assure the security of the facility" — not to punish Bennett. [Woosley Aff., DN 42-6 at 2]. In so doing, the defendants took constitutionally permissible actions. Prison officials may segregate pretrial detainees for security purposes. *Martucci*, 944 F.2d 291, 294; *Wolfish*, 441 U.S. at 547. Pretrial detainees are not entitled to a hot meal for every meal. *Higgs*, 2021 WL 4477081, at *3; *Crockett*, 2017 WL 3381659, at *4. And prison officials can search cells at will for valid reasons. Since all three conditions of his confinement were constitutional, Bennett does not have a viable claim, and the defendants are entitled to a summary judgment. *Phillips*, 534 F.3d at 539.

**B**

Bennett also argues that his procedural due process rights were violated when Captain Johnson placed him in segregation without first offering him an opportunity to participate in a hearing. [Resp., DN 60 at 18]. This argument fails as a matter of law.

Pretrial detainees are detained prior to an adjudication of guilt to ensure their presence at trial. That is, they have not been convicted of the crimes with which they are charged. For that reason, they retain a liberty interest in freedom from "punishment." *Wolfish*, 441 U.S. at 535–37. Specifically, pretrial detainees are entitled to due process protections when subjected to a "disability imposed for the purpose of punishment." *Id.* at 538. Here, however, for the reasons expressed earlier, Bennett's segregation was not imposed for the purpose of punishment, but for a "legitimate governmental objective." *Id.* at 539. Bennett was segregated "to maintain the safety and security within the" GCDC. [Woosley Aff., DN 61-1 at 2]; *see also* [Woosley Aff., DN 42-6 at 2]. The uncontroverted evidence shows that Bennett's segregation was not punitive. Bennett's procedural due process claim fails for this reason, and, thus, the defendants are entitled to a summary judgment on this claim. *Martucci*, 944 F.2d at 294.

IV.     Conclusion

Because he requests only monetary relief, Bennett's official capacity claims against the defendants fail as a matter of law. Additionally, there being no genuine dispute of material fact as to the lack of punishment in this case, Bennett's remaining § 1983 claims against the defendants in their individual capacities fail on the merits. Thus, the court concludes that the defendants' Motion for Summary Judgment [DN 42] as to all claims must be and hereby is **GRANTED** and Bennett's pending "Motion to Take Notice" [DN 66] is **DENIED** as moot. A separate judgment will be entered contemporaneously with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

December 14, 2023

Charles R. Simpson III, Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
        Counsel of Record